***********
The undersigned reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Hall.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated. The Defendant should be Jimmy's Meat Market, Inc., a North Carolina corporation. There is a question as to misjoinder or nonjoinder of parties in that Defendant objects to the addition of Walter Harvey Simmons, Jimmy A. Nixon, and Susan Simmons as additional Defendants shown for the first time on the hearing docket for January 24, 2006.
3. In addition to the other stipulations contained herein, the parties stipulate and agree with respect to the following:
 a. This case is subject to the North Carolina Workers' Compensation Act.
 b. An employment relationship existed between Thadders Snipes (hereinafter "decedent") and Defendant-Employer Jimmy's Meat Market and there was not a carrier on the risk on the date of injury of 12/24/2004.
 c. Decedent's average weekly wage was $450.00, yielding a compensation rate of $300.00 subject to Form 22 verification.
 d. Copies of the medical records and reports of Decedent's various health care providers may be introduced into evidence without further proof of authenticity. Defendants ask that this be subject to competence, relevance, and materiality. *Page 3 
 e. Copies of Discovery and responses thereto may be introduced into evidence without further proof of authenticity. Defendants ask that this be subject to competence, relevance, and materiality.
 f. Copies of the documents filed with the Industrial Commission pertaining to this matter may be introduced into evidence without further proof of authenticity.
4. It was further stipulated at the time of the hearing that Decedent's urosepsis, which resulted as a complication of his right shoulder surgery, was a natural and direct result of his right shoulder injury.
 ***********
The following were marked and received into evidence at the March 24, 2006 hearing as:
 EXHIBITS
1. Stipulated Exhibit No. 1 — NCIC forms, medical records, medical releases, employer correspondence, payroll verification, TTD verification, and impairment rating.
2. Stipulated Exhibit No. 2 — Pre-Trial Agreement.
3. State's Exhibit No. 1 — NCIC coverage screen.
4. State's Exhibit No. 2 — Articles of Incorporation and two annual reports.
5. State's Exhibit No. 3 — ESC records.
 ***********
The following were marked and received into evidence at the February 14, 2007 hearing as: *Page 4 
 EXHIBITS
1. Stipulated Exhibit No. 3 — Pre-trial Agreement, NCIC forms, medical records, medical releases, death certificate, and Administratrix of estate order.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Decedent was employed by Defendant, Jimmy's Meat Market, Inc. as a delivery driver. As part of his duties, he was required to deliver products consisting of, but not limited to, beef, chicken, seafood, and vegetables weighing from 20 to 60 pounds per box. He would typically make deliveries to Defendant's customers using Defendant's truck and would use a hand-truck to load the products on the truck and to offload the products into the customer's business. He was given the hand-truck by Defendant and both Decedent and Defendant testified that it was required that a hand-truck be used to move the products.
2. December 24, 2004 was a Friday and also Christmas Eve. Decedent had asked his son to ride with him on December 24, 2004 while he made his deliveries for Defendant.
3. Decedent made part of his normal Friday deliveries on Wednesday, but still had a substantial number of deliveries to make that Friday because Saturday was Christmas day and Defendant would be closed. Decedent not only had to make his remaining Friday deliveries, but also the Saturday deliveries.
4. Decedent made one run of deliveries and then returned to load up Defendant's delivery vehicle for a second run. He made these Friday deliveries using Defendant's vehicle and the hand-truck as was customary. *Page 5 
5. One of Decedent's deliveries was to a restaurant in Mt. Airy where it was discovered that Decedent had brought the wrong box of shrimp. Decedent had to return to Defendant's place of business to switch out the wrong box of shrimp for the correct box of shrimp and redeliver it. It was approximately 6:30 P.M. by the time decedent obtained the correct box of shrimp.
6. As it was Christmas Eve, Decedent was in a hurry to go home after making the last delivery. Therefore, he put the box of shrimp in his personal vehicle to drive it back to the Mt. Airy restaurant so he could go directly home from there.
7. When Decedent arrived at the Mt. Airy location he realized that he had forgotten to bring the hand-truck. Because Decedent did not have the hand-truck, he hoisted the 50-pound box of shrimp up onto his right shoulder to take it into the customer's location. When Decedent hoisted the box of shrimp onto his shoulder, he had an immediate onset of sharp pain in his right shoulder. He then gave the box of shrimp to his son, who carried it inside to complete the delivery. Decedent's son was with him the whole day and testified that his father was in a lot of pain after the injury.
8. Decedent and Mr. Nixon both testified that this event was an abnormal occurrence from Decedent's normal work routine because employees were expected to use the hand-truck for deliveries. It was also unusual due to the impending holiday in that Decedent used his own vehicle to make the delivery that is the subject of this claim and did not have the hand truck for unloading the box of shrimp.
9. Decedent suffered an injury by accident while making a delivery for the benefit of Defendant on December 24, 2004 when he lifted a box of shrimp and, upon throwing it onto his *Page 6 
shoulder, experienced the immediate onset of pain such that he had to ask his son to take the box for him.
10. Due to the Christmas holiday, Decedent was not expected to report back to work until December 27, 2004. Decedent's shoulder pain continued December 25 and December 26. When he arrived at work on December 27, 2004 at 6:00 A.M., he told Mr. Nixon of his injury and ongoing pain.
11. Decedent was seen at UNC Hospital on December 27, 2004 and on January 1, 2005 for his ongoing shoulder complaints. He was written out of work at the Emergency Room and referred for further consultation with an orthopaedic surgeon.
12. Decedent followed up with Dr. Brian Goldstein on January 4, 2005. Dr. Goldstein thought Decedent had a probable rotator cuff tear, continued him out of work, and noted that Decedent had an orthopaedic consultation set for January 12, 2005.
13. Beginning January 12, 2005, Decedent treated with Dr. Jay Keener, an orthopaedic surgeon at UNC Hospital, specializing in shoulders and elbows. Dr. Keener sent Decedent for an MRI and continued him out of work.
14. On January 24, 2005, Decedent filed a Form 18 report of injury with the Industrial Commission. The parties then learned that Defendant had failed to pay their workers' compensation insurance premiums, resulting in a lapse of coverage that included the date of Decedent's on-the-job injury.
15. Defendant made voluntary payments to Decedent in an amount equal to two-thirds of Decedent's average weekly wage. Defendant prepared a document dated February 1, 2005 regarding Decedent's injury and their agreement to make weekly payments to him until he *Page 7 
returned to work. On October 24, 2005, more than 11 months after receiving actual notice of Decedent's injury, Defendants filed a Form 61.
16. Based upon the voluntary payments to Decedent, the Full Commission finds that Defendant admitted the compensability of Decedent's claim.
17. Dr. Keener gave Decedent a 24% impairment rating to his right upper extremity. Following Decedent's release at MMI for his shoulder injury in February 2006, he developed deep vein thromboses that led to the formation of bilateral pulmonary emboli.
18. As a result of the pulmonary embolism, Decedent died on June 29, 2006.
19. Dr. Goldstein testified, and the Full Commission finds as fact, that Decedent's inactivity and immobilization due to his compensable injury caused his deep vein thrombosis, which caused the pulmonary embolism, leading to his death. Dr. Goldstein testified about other causes of deep vein thrombosis and found that they were unlikely causes of Decedent's deep vein thrombosis.
20. Decedent had also developed urosepsis as a complication of his right shoulder surgery that was a natural and direct result of his right shoulder injury.
21. The Full Commission finds that Decedent's death from the pulmonary embolism was causally related to his compensable injury by accident.
22. Jimmy Nixon is the sole owner and operator of Jimmy's Meat Market, Inc. Mr. Nixon had started in the business with Walter Simmons and Susan Simmons, but Mr. Nixon bought them out in April 2004. Thereafter, Jimmy A. Nixon was the person with the authority and ability to bring Defendant Jimmy's Meat Market, Inc. into compliance with the Act. *Page 8 
23. Mr. Nixon negligently allowed the workers' compensation insurance for Defendant Jimmy's Meat Market, Inc. to lapse on May 4, 2004. There was no coverage in place on the December 24, 2004 date of Decedent's injury by accident.
24. Defendant Jimmy's Meat Market, Inc. did not have workers' compensation coverage from May 4, 2004 through January 27, 2005. Employment Security Commission records show that Defendant Jimmy's Meat Market, Inc. had three or more employees from May 4, 2004 through January 27, 2005 and should have had workers' compensation coverage.
25. Defendant Jimmy's Meat Market, Inc. did not have coverage for the period May 4, 2004 through January 27, 2005, which amounts to 269 days.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 24, 2004, Decedent sustained an injury by accident arising out of and in the course of his employment with Defendant when he lifted a box of shrimp and upon throwing it onto his shoulder, experienced the immediate onset of pain. N.C. Gen. Stat. § 97-2(6).
2. Defendant's voluntary payment of weekly benefits until Decedent's death constitutes an acceptance of Decedent's claim. See Shockley v.Cairn Studios Ltd., 149 N.C. App. 961, 563 S.E.2d 207 (2002).
3. On June 29, 2006, Decedent died from a pulmonary embolism that was caused by complications related to his compensable injury by accident. N.C. Gen. Stat. § 97-38. *Page 9 
4. Shirley Woods Snipes is the widow of the Decedent. N.C. Gen. Stat. §§ 97-2(14), 97-39.
5. Plaintiff is entitled to have Defendant pay death benefits, including a funeral benefit not to exceed $3,500.00 and weekly compensation benefits in the amount of $300.00 per week for a period of 400 weeks to Decedent's widow, Shirley Woods Snipes. N.C. Gen. Stat. §§ 97-38, 97-39.
6. Plaintiff is entitled to have Defendant pay for all medical expenses related to Decedent's December 24, 2004 injury by accident. N.C. Gen. Stat. §§ 97-25, 97-25.1.
7. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
8. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, willfully fails to bring the employer in compliance, shall be guilty of a Class H felony. Any person who, with the ability and authority to bring an employer in compliance with N.C. Gen. Stat. § 97-93, neglects to bring the employer in compliance, shall be guilty of a Class 1 misdemeanor. Any person who violates this subsection may be assessed a civil penalty by the Commission in an amount up to one hundred percent (100%) of the amount of any compensation due the employers' employees injured during the time the employer failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d). *Page 10 
9. Jimmy Nixon, as the sole owner and operator of Jimmy's Meat Market, Inc., was the person with the authority and ability to bring Defendant Jimmy's Meat Market, Inc. into compliance with the Act.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay death benefits, including a funeral benefit not to exceed $3,500.00 and weekly compensation benefits in the amount of $300.00 per week for a period of 400 weeks to Decedent's widow, Shirley Woods Snipes.
2. Defendant shall pay all medical expenses related to Decedent's December 24, 2004 injury by accident.
3. An attorney's fee in the amount of 25% of the compensation due Plaintiff is hereby approved for Plaintiff's counsel.
4. Defendants shall pay expert witness fees in the amount of $510.00 for Dr. Jay Keener and in the amount of $730.00 for Dr. Brian Goldstein.
5. Pursuant to N.C. Gen. Stat. § 97-94(b), a penalty of $50.00 per day is assessed against Defendant-Employer Jimmy's Meat Market, Inc. for failing to secure workers' compensation insurance from May 4, 2004 through January 27, 2005. This amounts to 269 days without workers' compensation insurance. A check in the amount of $13,450.00 shall be made payable to the North Carolina Industrial Commission and sent directly to Assistant Attorney General Tracy Curtner at the Fraud Unit of the North Carolina Industrial Commission. *Page 11 
6. Having considered that Defendant did get coverage after Plaintiff-Employee's injury and undertook to pay temporary total disability compensation prior to a hearing and decision in this matter, no individual penalties are assessed against Jimmy Nixon at this time.
7. Walter Simmons and Susan Simmons, who were named as individual Defendants in the first docketing of this case, are hereby DISMISSED from this matter.
8. Defendant shall pay the costs.
This the 29th day of February, 2008.
S/_______________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR *Page 1